UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAUL YAHNE,

          Plaintiff,

v.

PIERCE COUNTY CORRECTIONS *et al.*,

          Defendants.

Case No. C04-5725FDB

REPORT AND RECOMMENDATION

**NOTED FOR:
AUGUST 26th, 2005**

      This Civil Rights action has been referred to United States Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4. Plaintiff has been granted *in forma pauperis* status. Before the court is defendant's motion for summary judgment. (Dkt. # 14). Plaintiff has not responded to the motion.

FACTS

      Plaintiff alleges failure to protect as a result of his being placed in a jail cell with a person he did not get along with. On September 8th, 2004 he and his cell partner were in a fight. (Dkt. # 3). He alleges he sent grievances to jail staff asking to be placed in another cell before the fight, but his messages were ignored. (Dkt. # 3).

      Plaintiff asks for future medical expenses for a back injury and dental work for two teeth that darkened after the fight. He also asks for $75, 000.00 in damages for pain and suffering. In addition, he

REPORT AND RECOMMENDATION
Page - 1

asks that one dollar be donated to the charity of his choice for each person booked into the jail and that Chief Bison force his staff to go to classes on how to deal with hurt or "mental" people. If his back does not heal he also wants $1000 per week. (Dkt. # 3).

The named defendants in this action are Chief Bison of the Pierce County Sheriff's Office and Pierce County itself. (Dkt. # 3). Defendants ask for summary judgment and argue the actions of Pierce County did not constitute deliberate indifference to the plaintiff, and lack of personal participation on the part of Chief Bison. (Dkt. # 14). The defendants have placed before the court information showing there is a policy in place that structures the decision where an inmate will be housed in the jail and the policy is objective. (Dkt. # 14 exhibits). The defendants have set forth plaintiff's placement history as follows:

> Plaintiff was initially classified on 4-27-04 as a risk level 2 (maximum security). (See Ex. #3) This classification reflected Plaintiffs behavioral problems at the time of his initial booking and the severity of past and current charges. (See Ex. #8, p. 4 of 4, See also Ex. #4 p. 4) Plaintiff was housed in protective custody consistent with his classification. (See Ex. #8) On 5-26-04 plaintiff's classification was re-evaluated and upgraded to level 3 after Plaintiff expressed a desire to be removed from protective status and placed in the general population. (See Ex. #8) Accordingly, he was housed in the 4 North area of the jail with other level 3 inmates. (See Ex. #8 p. 4 of 4) On 7-6-04 at approximately 3:50 p.m. during meal time, Plaintiff was observed by jail staff as approaching another inmate with "his hands up, fists curled in a fighting stance". (See Ex. #9) According to the reporting Officer, Plaintiff admitted to taking a swing at, but not striking, another inmate after an exchange of unkind words. (See Ex. #9) Due to the incident, Plaintiff was re-classified as level 2 and transferred to the 3 West area to be housed with other level 2 inmates. On 7-06-04, while being escorted from 4 North to 3 West, Plaintiff made several racially biased threats to harm other inmates. (See Ex. #10) In light of those threats, and the prior disturbance instigated by Plaintiff, he was re-classified to level 1. (See Ex. #10)
>
> Plaintiff remained housed in 3 West "B" area for nearly two months with only minor behavioral issues. (See Ex. #8, p. 3 of 4) On 8-28-04 Plaintiff alerted PCDCC staff to a possible threat of harm to another inmate housed in 3 West "B" area. (See Ex. #11) Staff took Plaintiff's allegations seriously and interviewed the inmates named by Plaintiff. (Id.) As staff was conducting their investigations, it became apparent that other inmates were aware plaintiff was responsible for "tipping off" the staff. (Id.) Staff overheard threats being made to Plaintiff and thought it best to remove him from 3 West B for his own safety and have him placed in protective custody in 3 South. (Id.) Plaintiff filed an inmate grievance over being placed in protective custody on 8-28-04. (See Ex. #12) Plaintiff felt that he was being punished for trying to be helpful. (Id.) In answer to his grievance, staff removed Plaintiff from protective custody in 3 South and relocated him to 3 West "A" on 8-30-04 (same area but different unit than previous). (See Id.) After being relocated to 3 West "A", Plaintiff filed a grievance about being housed back near 3 West B, not getting along with his new cell mate, and requesting that he be housed with level 3 inmates (plaintiff was still classified as level 2). (See Ex. #13) In light of his classification level and space availability within the unit, his grievance was denied. (Id.) Plaintiff did not appeal the grievance, rather in the

appeals section he wrote "save this please, I need it for my law suit." (Id. p. 2) On 9-05-04, Plaintiff wrote a note to staff simply stating "I would like to be move [sic] me and my celly [sic] is not getting along". (See Ex. #14) The note contained no information to suggest that plaintiff was at risk of physical harm and there had been no incidents involving Plaintiff and his cell mate between his 8-30-04 grievance and the date of the note. Consequently, staff responded that "not getting along" was not a sufficient reason to relocate Plaintiff and denied his request. (See Id.)

On 9-08-04 at approximately 12:21 p.m., Corrections Officer Friermuth responded to a distress call from 3 West "A" cell 4 where he observed Plaintiff standing at the door holding a towel to his face. (See Ex. #15) Friermuth immediately removed Plaintiff from the cell and investigated what appeared to be a physical altercation between Plaintiff and his cell mate, Lamont Broussard. (See Id.) When removing plaintiff from the cell, Plaintiff was observed having made a racially disparaging remark to Broussard. (See Id.) Plaintiff told Officer Friermuth that Broussard had tried to talk him into giving up some of his commissary items and when Plaintiff refused, Broussard told him he wanted the bottom bunk back. (Id.) Plaintiff told Officer Friermuth that after he refused to relinquish the bottom bunk that a fight ensued. (Id.) Inmate Broussard told Officer Friermuth that Plaintiff had come at him, provoking him into defending himself. (Id.) Initially, both inmates wanted the other charged/sanctioned for assault; however they both changed their minds shortly thereafter. (Id.) Officer Friermuth was unable to identify any witnesses to the incident, other than the two participants. (Id.) Plaintiff received medical treatment for a laceration above his eye. (Id.) Upon return, plaintiff was re-classified as level 1 and placed into protective custody in 3 South C. (See Ex. #15 & #3)

During the remainder of Plaintiff's time in custody, he was moved to various housing units within the facility. (See Ex. #8) On 11-17-04, plaintiff had to be moved from 3 South C for what the PCDCC calls "peace and harmony" reasons and was placed in protective custody after being caught lying to staff. (See Ex. #8) Plaintiff was again moved for peace and harmony purposes on 2-28-05 after another inmate complained that Plaintiff had made a threat to kill him. (See Ex. #8 & Ex. #16) Plaintiff remained housed in 3 South E up until his release on 3-26-05.

(Dkt. # 14, pages 3 through 6, footnote omitted). Plaintiff does not contest the facts set forth above and did not respond to defendant's motion. Local Rule 7 (b) (2) provides that "[i]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."

## STANDARD

Pursuant to Fed. R. Civ. P. 56 (C), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

REPORT AND RECOMMENDATION
Page - 3

law." Fed. R. Civ. P. 56 (C). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

## DISCUSSION

The legal standard in a failure to protect case was set forth by the Supreme Court in Farmer v. Brennan, 511 U.S. 825 (1994). To establish an Eighth Amendment violation an inmate must allege both an objective element, that the deprivation was sufficiently serious, and, a subjective element, that a prison official acted with deliberate indifference. To constitute deliberate indifference, an official must know of and disregard an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; **and the official must also draw the inference**. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1983 (1994) (emphasis added). In addition when a person seeks to hold a defendant liable in an action brought under 42 U.S.C. § 1983 the person must show the defendant personally participated in the alleged violation. Leer v. Murphy, 844 F. 2d. 628 (9th Cir. 1988).

A. Chief Bison.

There are no facts showing that Chief Bison played any part in the decisions where plaintiff would be housed. A plaintiff must set forth the specific factual bases upon which he claims each defendant is liable. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58 (1978). A theory of respondeat superior is not sufficient to state a claim under Section 1983. Padway v. Palches, 665 F.2d 965 (9th Cir. 1982). Nor can individuals be sued under Section 1983 in their official capacities. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Plaintiff has failed to show that any action taken by defendant Bison caused him any injury. This defendant is entitled to dismissal from this action.

    B. Pierce County.

Plaintiff was a detainee at a county jail at the time of the conduct alleged in the complaint. To establish defendants violated his Eighth Amendment rights, plaintiff has the burden of proving (1) that the defendants, either personally or by policy, acted with deliberate indifference to his basic need for housing and/or medical care, (2) that defendants acted under color of law, and (3) that their conduct caused harm to the plaintiff that amounted to punishment. Farmer v. Brennan, 511 U.S. 825 (1994); Bell v. Wolfish, 441 U.S. 520 (1979); LeMair v. Maas, 12 F.3d 1444 (9th Cir. 1993). Plaintiff has failed to show any employee at the jail believed him to be in danger of attack. His request to move did not specifically inform jail personnel of the nature of the conflict between the plaintiff and his cell partner and did not inform them that violence was likely. (Dkt. # 14 exhibits). Pierce County is entitled to dismissal from this action as plaintiff failed to produce evidence to show a culpable state of mind or deliberate indifference.

## CONCLUSION

Plaintiff's failure to respond to the motion and failure to come forward with evidence to show that

any named defendant believed him to be in danger prior to the assault are fatal to this action.  The case should be **DISMISSED WITH PREJUDICE.**  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **August 26th, 2005** as noted in the caption.

DATED this 27th day of July, 2005.

/S/ *J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge